FILED

1  THE WEISER LAW FIRM, P.C.
   KATHLEEN A. HERKENHOFF (168562)
2  12707 High Bluff Drive, Suite 200
   San Diego, CA 92130
3  Telephone: (858) 794-1441
   Facsimile: (858) 794-1450
4  kah@weiserlawfirm.com

5  Attorneys for Plaintiff

6

7                UNITED STATES DISTRICT COURT

8                CENTRAL DISTRICT OF CALIFORNIA

9
   COLLEEN WITMER, Derivatively on Behalf )   Case No.  CV13-09359 -RGK
10 of IXIA,                               )                       (FFMx)
                                          )
11                    Plaintiff,          )   VERIFIED SHAREHOLDER DERIVATIVE
                                          )   COMPLAINT FOR BREACH OF
12          vs.                           )   FIDUCIARY DUTY, GROSS
                                          )   MISMANAGEMENT, ABUSE OF
13 VICTOR ALSTON, ATUL BHATNAGAR,         )   CONTROL, UNJUST ENRICHMENT AND
   THOMAS B. MILLER, ERROL GINSBERG,      )   VIOLATIONS OF CAL. CORP. CODE
14 JONATHAN FRAM, LAURENT ASSCHER,        )   §§25402/25502.5
   GAIL HAMILTON, JON F. RAGER,           )
15 CHRISTOPHER LEE WILLIAMS, ALAN         )
   GRAHAME, RAYMOND DE GRAAF,             )   DEMAND FOR JURY TRIAL
16 COLSTON H. WALKER II, RONALD W.        )
   BUCKLY,                                )
17                                        )
                      Defendants,         )
18                                        )
   — and —                                )
19                                        )
   IXIA,                                  )
20                                        )
                 Nominal Defendant.       )
21 _____

22

23

24

25

26

27

28

### SHAREHOLDER DERIVATIVE COMPLAINT

1. Plaintiff Colleen Witmer ("Plaintiff"), by and through her undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Gross Mismanagement, Abuse of Control and Unjust Enrichment (the "Complaint") for the benefit of nominal defendant Ixia ("Ixia" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from 2010 to the present (the "Relevant Period").

2. According to its public filings, Ixia develops amazing products so its customers can connect the world. Ixia helps its customers provide an always-on user experience through fast, secure delivery of dynamic, connected technologies and services. Through actionable insights that accelerate and secure application and service delivery, Ixia's customers benefit from faster time to market, optimized application performance and higher-quality deployments.

3. The true facts, which were known by defendants, but were undisclosed during the Relevant Period, were as follows:

   (a)    that defendants improperly recognized revenues related to the Company's warranty and software maintenance contracts;

   (b)    that defendants "misstated" defendant Alston's[1] academic credentials and employment history;

   (c)    that defendants' 2013 statements regarding the Company's financial projections were false and misleading;

   (d)    that defendants caused the Company to lack adequate internal and financial controls; and

   (e)    that defendants caused the Company's financial statements and filings with the United States Securities and Exchange Commission ("SEC") to be materially false and misleading at all relevant times.

---

[1] Defined further herein.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP. CODE §§25402/25502.5

1       4.     As a result of defendants' false statements, Ixia has been forced to expend significant

2   resources in connection with an investigation and restatement resulting from the illicit activity.

3       5.     In addition, Ixia has suffered harm in connection with the illicit insider sales totaling

4   over $19 million, made by certain of the defendants (including half of the current Board) during a

5   period of just over one month.  Indeed, this insider selling was detailed in an article published in *The*

6   *Wall Street Journal* ("*WSJ*").  *WSJ* noted that these sales in February and March 2013 exceeded what

7   the individuals had sold during the ***previous seven years***.

8       6.     Accordingly, as a result of defendants' breaches, the Company has been damaged.

9   **JURISDICTION AND VENUE**

10      7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that

11  Plaintiff and defendants are citizens of different states and the matter in controversy exceeds

12  $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law

13  claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer

14  jurisdiction on a court of the United States which it would not otherwise have.

15      8.     Venue is proper in this district because a substantial portion of the transactions and

16  wrongs complained of herein, including the defendants' primary participation in the wrongful acts

17  detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains

18  executive offices in this district, and defendants have received substantial compensation in this district

19  by engaging in numerous activities and conducting business here, which had an effect in this district.

20  **THE PARTIES**

21      9.     Plaintiff is a current shareholder of Ixia and has been continuously since December 2009.

22  Plaintiff is a citizen of North Carolina.

23      10.    Nominal party Ixia is a California corporation with its executive offices located at 26601

24  W. Agoura Road, Calabasas, California 91302.  According to its public filings, Ixia develops amazing

25  products so its customers can connect the world.  Ixia helps its customers provide an always-on user

26  experience through fast, secure delivery of dynamic, connected technologies and services.  Through

27

28  - 2 -

1    actionable insights that accelerate and secure application and service delivery, Ixia's customers benefit

2    from faster time to market, optimized application performance and higher-quality deployments.

3        11.    Defendant Victor Alston ("Alston") served as the Company's President and Chief

4    Executive Officer ("CEO") from May 2012 until his "resignation" on October 24, 2013.  Previously,

5    Alston served as the Company's Chief Operating Officer ("COO") and Senior Vice President of

6    Product Development.  Defendant Alston joined Ixia in August 2004, serving as its Vice President of

7    Application Development at that time. Upon information and belief, defendant Alston is a citizen of

8    California.

9        12.    Defendant Atul Bhatnagar ("Bhatnagar") served as the Company's President and CEO

10   from March 2008 until May 2012.  Upon information and belief, defendant Bhatnagar is a citizen of

11   California.

12       13.    Defendant Thomas B. Miller ("Miller") has served as the Company's Chief Financial

13   Officer ("CFO") since March 2000.  Upon information and belief, defendant Miller is a citizen of

14   California.

15       14.    Defendant Errol Ginsberg ("Ginsberg"), a founder of the Company, serves as the

16   Chairman of the Board, Acting CEO and Chief Innovation Officer.  Ginsberg has served as Chairman of

17   the Board since January 2008.  Previously, Ginsberg served as the Company's President from 1997

18   until 2000, and as CEO from 2000 until 2007.  Upon information and belief, defendant Ginsberg is a

19   citizen of California.

20       15.    Defendant Jonathan Fram ("Fram") has served as a director of the Company since July

21   2005.  In addition, defendant Fram served as Chair of the Board's Audit Committee (the "Audit

22   Committee") during the Relevant Period.  Upon information and belief, defendant Fram is a citizen of

23   California.

24       16.    Defendant Laurent Asscher ("Asscher") has served as a director of the Company since

25   October 2008.  In addition, defendant Asscher served as a member of the Audit Committee during the

26   Relevant Period.  Upon information and belief, defendant Asscher is a citizen of Belgium.

27

28

- 3 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP.
CODE §§25402/25502.5

17.     Defendant Gail Hamilton ("Hamilton") has served as a director of the Company since July 2005.  In addition, defendant Hamilton served as a member of the Audit Committee during the Relevant Period.  Upon information and belief, defendant Hamilton is a citizen of California.

18.     Defendant Jon F. Rager ("Rager") served as a director of the Company from May 1997 until June 19, 2013, and previously served as the Company's CFO from June 1997 until March 2000.  In addition, defendant Rager served as a member of the Audit Committee during the Relevant Period.  Upon information and belief, defendant Rager is a citizen of California.

19.     Defendant Christopher Lee Williams ("Williams") serves as the Company's Vice President ("VP") Human Resources.  Upon information and belief, defendant Williams is a citizen of California.

20.     Defendant Alan Grahame ("Grahame") serves as Senior VP, Worldwide Sales.  Upon information and belief, defendant Grahame is a citizen of California.

21.     Defendant Raymond de Graaf ("de Graaf") serves as the Company's VP, Operations.  Upon information and belief, defendant de Graaf is a citizen of California.

22.     Defendant Colston H. Walker II ("Walker") serves as the Company's VP, Support.  Upon information and belief, defendant Walker is a citizen of California.

23.     Defendant Ronald W. Buckly ("Buckly") serves as the Company's Senior VP, Corporate Affairs, General Counsel and Corporate Secretary.  Upon information and belief, defendant Buckly is a citizen of California.

24.     Collectively, defendants Alston, Bhatnagar, Miller, Ginsberg, Fram, Asscher, Hamilton, Rager, Williams, Grahame, de Graaf, Walker and Buckly shall be referred to herein as the "Defendants."

25.     Collectively, defendants Fram, Asscher, Hamilton and Rager shall be referred to herein as "Audit Committee Defendants."

26.     Collectively, defendants Alston, Miller, Ginsberg, Hamilton, Rager, Williams, Grahame, de Graaf, Walker and Buckly shall be referred to herein as the "Insider Selling Defendants."

- 4 -

1     27.     The true names and capacities of defendants sued herein under California Code of Civil

2    Procedure §474 as Does 1 through 25, inclusive, are presently not known to Plaintiff, who therefore

3    sues these defendants by such fictitious names.  Plaintiff will seek to amend this Complaint and include

4    these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously

5    named defendants is responsible in some manner for the conduct alleged herein and for the injuries

6    suffered by the Company as a result of defendants' wanton and illegal conduct.

7                                           **DEFENDANTS' DUTIES**

8     28.     By reason of their positions as officers, directors, and/or fiduciaries of Ixia and because

9    of their ability to control the business and corporate affairs of Ixia, Defendants owed Ixia and its

10   shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use

11   their utmost ability to control and manage Ixia in a fair, just, honest, and equitable manner.  Defendants

12   were and are required to act in furtherance of the best interests of Ixia and its shareholders so as to

13   benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each

14   director and officer of the Company owes to Ixia and its shareholders the fiduciary duty to exercise

15   good faith and diligence in the administration of the affairs of the Company and in the use and

16   preservation of its property and assets, and the highest obligations of fair dealing.

17     29.     Defendants, because of their positions of control and authority as directors and/or

18   officers of Ixia, were able to and did, directly and/or indirectly, exercise control over the wrongful acts

19   complained of herein.  Because of their advisory, executive, managerial, and directorial positions with

20   Ixia, each of the Defendants had knowledge of material non-public information regarding the Company.

21     30.     To discharge their duties, the officers and directors of Ixia were required to exercise

22   reasonable and prudent supervision over the management, policies, practices and controls of the

23   Company.  By virtue of such duties, the officers and directors of Ixia were required to, among other

24   things:

25     (a)     Exercise good faith to ensure that the affairs of the Company were conducted in

26   an efficient, business-like manner so as to make it possible to provide the highest quality performance

27   of their business;

28

- 5 -

1       (b)     Exercise good faith to ensure that the Company was operated in a diligent, honest

2   and prudent manner and complied with all applicable federal and state laws, rules, regulations and

3   requirements, and all contractual obligations, including acting only within the scope of its legal

4   authority; and

5       (c)     When put on notice of problems with the Company's business practices and

6   operations, exercise good faith in taking appropriate action to correct the misconduct and prevent

7   its recurrence.

8       31.     Pursuant to the Audit Committee's Charter, the members of the Audit Committee are

9   required, *inter alia*, to:

10      (a)     Review the adequacy and effectiveness of the Company's system of internal

11  controls and disclosure controls and procedures;

12      (b)     Review and discuss with management and the independent auditors the annual

13  audited financial statements and quarterly unaudited financial statements;

14      (c)     Review before the release the unaudited quarterly operating results in the

15  Company's quarterly earnings release;

16      (d)     Discuss at least annually with the Company's legal counsel the effectiveness of

17  the Company's legal compliance programs, any legal matters that may have a material impact on the

18  Company's financial statements and any material reports or inquiries received from regulators or

19  governmental agencies.

20                          **SUBSTANTIVE ALLEGATIONS**

21      32.     According to its public filings, Ixia develops amazing products so its customers can

22  connect the world.  Ixia helps its customers provide an always-on user experience through fast, secure

23  delivery of dynamic, connected technologies and services.  Through actionable insights that accelerate

24  and secure application and service delivery, Ixia's customers benefit from faster time to market,

25  optimized application performance and higher-quality deployments.

26

27

28
                                        - 6 -

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED
## DURING THE RELEVANT PERIOD

33.     On February 3, 2011, Defendants issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2010.  The press release was entitled "Ixia Announces Record Revenue for Fourth Quarter and Fiscal Year 2010," and reported that total revenue for the fiscal year 2010 was $276.8 million, an increase of 56 percent compared with $178.0 million reported in fiscal year 2009.  The press release reported net income for fiscal year 2010 of $10.7 million, or $0.16 per diluted share, compared with a net loss of $44.2 million, or $0.70 per share, in fiscal year 2009.

34.     On March 4, 2011, Defendants caused the Company to file with the SEC its Form 10-K for the year ending December 31, 2010 (the "2010 10-K").  The 2010 10-K was signed by defendants Bhatnagar, Miller, Ginsberg, Fram, Asscher, Hamilton and Rager.  In addition to repeating the fiscal year 2010 financial results set forth in the press release, the 2010 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications"), signed by defendants Bhatnagar and Miller, who stated:

I, [Atul Bhatnagar/Thomas B. Miller], certify that:

1. I have reviewed this Annual Report on Form 10-K of Ixia;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d- 15(f)) for the registrant and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated

- 7 -

subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

\*       \*       \*

In connection with the Annual Report of Ixia (the "Company") on Form 10-K for the period ended December 31, 2010 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), we, Atul Bhatnagar, President and Chief Executive Officer of the Company, and Thomas B. Miller, Chief Financial Officer of the Company, certify, to the best of our knowledge, pursuant to Rule 13a-14(b) under the Securities Exchange Act of 1934 and 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

- 8 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP. CODE §§25402/25502.5

1

2       35.     On February 2, 2012, Defendants reported the Company's financial results for the fourth

3   quarter and year ended December 31, 2011 in a press release.  The press release stated that total revenue

4   for the 2011 fourth quarter was a record $83.7 million, compared with $77.8 million reported for the

5   2010 fourth quarter and $77.3 million reported for the 2011 third quarter.  The press release further

6   reported that total revenue for the fiscal year 2011 was $308.4 million, an increase of 11 percent

7   compared with $276.8 million reported for fiscal year 2010, and also reported net income for the 2011

8   fourth quarter of $8.9 million, or $0.12 per diluted share, compared with net income of $5.8 million, or

9   $0.08 per diluted share, for the 2010 fourth quarter.

10       36.     Commenting on the Company's performance in Ixia's press release announcing fourth

11   quarter and year ended December 31, 2011 results, defendant Bhatnagar stated, "[r]ecord revenue and

12   bookings led a strong fourth quarter and finish to 2011."

13       37.     On March 5, 2012, Defendants caused the Company to file with the SEC its Form 10-K

14   for the year ending December 31, 2011 (the "2011 10-K").  The 2011 10-K was signed by defendants

15   Bhatnagar, Miller, Ginsberg, Fram, Asscher, Hamilton and Rager.  In addition to repeating the fiscal

16   year 2011 financial results announced in the press release, the 2011 10-K contained SOX Certifications,

17   signed by Bhatnagar and Miller, which were substantially similar to those set forth above.

18       38.     On April 19, 2012, Defendants filed a press release announcing the Company's financial

19   results for the first quarter of 2012.  The press release reported total revenue for the 2012 first quarter of

20   $85.6 million, compared with $78.5 million reported for the 2011 first quarter and $83.7 million

21   reported for the 2011 fourth quarter, and net income for the 2012 first quarter of $4.4 million, or $0.06

22   per diluted share, compared with net income of $7.1 million, or $0.10 per diluted share, for the 2011

23   first quarter.

24       39.     On May 2, 2012, Defendants caused the Company to file with the SEC a quarterly report

25   on Form 10-Q.  The Form 10-Q was signed by defendants Bhatnagar and Miller, and reiterated the

26   financial results set forth in the April 19, 2012 press release.  In addition, the Form 10-Q contained

27

28

- 9 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP.
CODE §§25402/25502.5

SOX Certifications, signed by defendants Bhatnagar and Miller, which were substantially similar to those set forth above.

40.   On July 26, 2012, Defendants issued a press release announcing the Company's financial results for the second quarter of 2012.  The press release reported "record" total revenue for the 2012 second quarter of $92.3 million, compared with $69.0 million reported for the 2011 second quarter and $85.6 million reported for the 2012 first quarter, and net income for the 2012 second quarter of $26.9 million, or $0.33 per diluted share, compared with net income of $0.5 million, or $0.01 per diluted share, for the 2011 second quarter.

41.   On August 7, 2012, Defendants caused the Company to file with the SEC a quarterly report on Form 10-Q.  The Form 10-Q was signed by defendants Alston and Miller, and reiterated the financial results set forth in the July 26, 2012 press release.  In addition, the Form 10-Q contained SOX Certifications, signed by defendants Alston and Miller, which were substantially similar to those set forth above.

42.   On October 24, 2012, Defendants issued a press release announcing the Company's financial results for the third quarter of 2012.  The press release reported total revenue for the 2012 third quarter was $109.6 million, compared with $77.3 million reported for the 2011 third quarter and $92.3 million reported for the 2012 second quarter, and net income for the 2012 third quarter of $11.4 million, or $0.15 per diluted share, compared with net income of $6.4 million, or $0.09 per diluted share, for the 2011 third quarter.

43.   On November 8, 2012, Defendants caused the Company to file with the SEC a quarterly report on Form 10-Q.  The Form 10-Q was signed by defendants Alston and Miller, and reiterated the financial results set forth in the October 24, 2012 press release.  In addition, the Form 10-Q contained SOX Certifications, signed by defendants Alston and Miller, which were substantially similar to those set forth above.

44.   On January 14, 2013, Defendants issued a press release entitled "Ixia Increases Fourth Quarter Guidance."  This press release set forth, in relevant part:

- 10 -

**Ixia (Nasdaq: XXIA)** today announced that it is revising its revenue guidance range for the fourth quarter of 2012 and *currently expects revenue to be in the range of $123.5 million to $124.5 million, above its previously stated guidance range of $118 million to $122 million.* Ixia also indicated that it expects fourth quarter combined revenue from its two recent acquisitions, Anue Systems, Inc. ("Anue") and BreakingPoint Systems, Inc. ("BreakingPoint"), to be in the range of $30 to $31 million, compared with its previously stated guidance of $26 to $28 million. Both GAAP and non-GAAP diluted earnings per share for the fourth quarter are expected to be at, or slightly above, the high end of the previously given guidance.

"Ixia delivered an impressive fourth quarter with strong momentum across all of our solutions," commented Vic Alston, Ixia's president and chief executive officer. "The integration of our Anue and BreakingPoint acquisitions is tracking well and we are increasing our presence at enterprise and service provider accounts. Ixia is well positioned to help these customers accelerate and secure the delivery of applications over their mobile and data center networks." [Emphasis added.]

45.     Following this press release, Ixia's stock rose.  For example, Ixia stock increased from a closing price of $17.66 per share on January 11, 2013 (the trading day immediately preceding the press release) to close at $19.24 per share on January 14, 2013.  On January 15, 2013, Ixia stock closed at $20.74 per share.

46.     Over the next two months, the Insider Selling Defendants cashed in, selling their personally held or controlled Ixia stock while in possession of material, adverse, non-public information.  This insider selling was detailed in an article published in an article in *WSJ* published on November 13, 2013 entitled "Executives Hit Sweet Spot on Stock Sales."[2]  The relevant portion of the *WSJ* article set forth:

On Jan. 14, Ixia, a Calabasas, Calif., company that makes Internet testing equipment, said revenue for last year's fourth quarter would exceed earlier guidance. It cited better-than-expected performance at two recently purchased companies.

*As the stock rose, insiders began selling. Over the next two months, eight senior executives, including then CEO Victor Alston and the chairman and general counsel,*

---

[2] Article available at: http://online.wsj.com/news/articles/SB10001424052702303376904579135782687348574

*sold a total of more than $18.4 million of stock at an average price of $20.96 a share. The sales exceeded what the firm's executives had sold during the previous seven years.*

*Then came a surprise. On April 11, Ixia lowered guidance for the first quarter, citing revenue-recognition problems. Revenues for 2010, 2011 and the first three quarters of 2012 were restated. On April 30, the firm said earnings for the second quarter would likely miss analyst expectations. By May 1, its stock had fallen to $14.51. If the insiders had sold at that point rather than when they did earlier in the year, they would have collected $5.7 million less, a Journal analysis determined.*

It isn't clear when senior executives learned about the problems. An Ixia spokesperson and the insiders declined to comment on the trading.

On Oct. 24, Ixia said in a news release that Mr. Alston had resigned after the company determined he had misstated his age, academic credentials and employment history. Its chairman and founder, Errol Ginsberg, has taken over that position. [Emphasis added.]

47.     On February 6, 2013, Defendants issued a press release reporting the Company's financial results for the fourth quarter and year ended December 31, 2012. The press release reported that total revenue for the 2012 fourth quarter was a record $124.1 million, compared with $83.7 million reported for the 2011 fourth quarter and $109.6 million reported for the 2012 third quarter, and net income for the 2012 fourth quarter of $4.6 million, or $0.06 per diluted share, compared with net income of $9.8 million, or $0.14 per diluted share, for the 2011 fourth quarter.

48.     The true facts, which were known by Defendants, but were undisclosed during the Relevant Period, were as follows:

(a)     that Defendants caused the Company to improperly recognize revenues related to its warranty and software maintenance contracts;

(b)     that Defendants "misstated" defendant Alston's academic credentials and employment history;

(c)     that Defendants' 2013 statements regarding the Company's financial projections were false and misleading;

(d)     that Defendants had caused the Company to lack adequate internal and financial controls; and

(e)     that Defendants had caused the Company's financial statements filed with the SEC to be materially false and misleading at all relevant times.

- 12 -

1                           **The Truth Slowly Begins to Emerge**

2          49.    On March 19, 2013, the truth began to emerge that Ixia's revenues were not as grand and

3    record breaking as Defendants had repeatedly stated and reported.  On that day, Defendants announced

4    that Ixia had filed with the SEC a Form 12b-25 relating to the Company's Annual Report on Form 10-K

5    for the year ended December 31, 2012, and that Defendants needed to delay the filing of Ixia's Annual

6    Report, "to correct an error related to the manner in which [Ixia] recognizes revenues for its warranty

7    and software maintenance contracts."

8          50.    Then on April 3, 2013, Defendants announced that after a further evaluation of the

9    Company's finances, and identifying an additional error in the Company's revenue recognition

10   practices that required correction, the Company's management recommended to the Audit Committee

11   that the Company restate previously issued financial statements for the fiscal years ended December 31,

12   2011 and 2010, and the fiscal quarters ended March 31, 2011, June 30, 2011, September 30, 2011,

13   March 31, 2012, June 30, 2012, and September 30, 2012 (the, "Restated Periods"); and, that the

14   financial statements from the Restated Periods should no longer be relied upon.

15         51.    On this news, the Company's shares declined $1.94 per share, or over 9.5%, to close on

16   April 4, 2013, at $18.37 per share.

17         52.    On April 8, 2013, Defendants issued a press release announcing the filing of Ixia's

18   restated financial statements.  The press release stated the following in relevant part:

19         As part of the 2012 Form 10-K, Ixia has completed the restatement of its previously
           issued consolidated financial statements for the years ended December 31, 2010 and
20         2011, its unaudited quarterly financial information for each of the quarters and year-to-
           date periods in the year ended December 31, 2011 and in the nine months ended
21         September 30, 2012, and its selected financial data for the years ended December 31,
           2008 and 2009. With the filing of its 2012 Form 10-K, Ixia is now current in its filings
22         of periodic reports with the Commission.

23
           The restated consolidated financial statements correct certain errors that existed in Ixia's
24         previously issued consolidated financial statements, principally related to the manner in
           which the Company recognized revenues related to its warranty and software
25         maintenance contracts, including a previous implied warranty and software maintenance
           arrangement with one of the Company's customers. The related changes in the
26         Company's revenue recognition practices will generally result in a shift of revenues
           between accounting periods in our previously issued financial statements. The changes
27

28                                              - 13 -

will not have any impact on the total revenues recognized over the life of a warranty and software maintenance contract or arrangement, although the timing of the recognition of such revenues will generally commence earlier and end earlier than was reflected in our previously issued financial statements for the restated periods. While the Company has made certain restatement adjustments that affect revenues, operating results, and deferred revenues for each of the restated periods, the restatement adjustments do not affect the total revenues ultimately earned or to be earned, or the amount or timing of cash received or to be received, from individual sales transactions. Accordingly, the restatement adjustments do not affect the Company's liquidity or overall cash flow for any prior period.

53.    On April 30, 2013, Defendants issued a press release announcing the Company's financial results for the first quarter ended March 31, 2013.  Defendants announced that total revenue for the 2013 first quarter was $122.76 million, compared with $86.73 million reported for the 2012 first quarter, and net income for the 2013 first quarter of $8.1 million, or $0.11 per diluted share, compared with net income of $5.2 million, or $0.07 per diluted share, for the 2012 first quarter.

54.    During a conference call that same day, Defendants issued second quarter 2013 revenue guidance of between $119 to $122 million.[3]

55.    On July 8, 2013, Defendants issued a press release announcing certain preliminary financial results for the second quarter ended June 30, 2013.  Therein, Defendants *lowered* the Company's previously issued revenue guidance from April 30, 2013.  The press release stated the following in relevant part:

> ***Total revenue for the second quarter of 2013 is expected to be in the range of $114 million to $116 million, below the company's previous guidance of $119 million to $122 million.*** Revenue from Ixia's 2012 acquisitions, Anue Systems, Inc. ("Anue") and BreakingPoint Systems, Inc. ("BreakingPoint"), is expected to be at the high end of the previously given range of $28 million to $32 million.
>
> ***"We are disappointed with our topline performance this quarter, which was impacted by several factors, including lower than expected revenue from network equipment manufacturers and certain service providers as customers extended review cycles and certain large deals that were pushed into future quarters,"*** said Vic Alston, president and CEO of Ixia.

---

[3] *See* http://www.reuters.com/finance/stocks/XXIA.OQ/key-developments/article/2746791

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP. CODE §§25402/25502.5

"We did, however, see several positive trends in the quarter. Sales to our two largest customers, AT&T and Cisco, were strong and in line with expectations, and our overall book-to¬bill ratio was in excess of one. Additionally, the performance of our 2012 acquisitions, Anue and BreakingPoint, was very encouraging and revenue is expected to register at the high end of our expectations for the second quarter. These indicators give us confidence that our competitive position remains strong although we remain cautious about the near-term spending environment," continued Alston. [Emphasis added.]

56.     On this news, the Company's shares declined $3.44 per share, or over 19%, to close on July 9, 2013, at $14.30 per share.

57.     On July 30, 2013, Defendants issued a press release announcing the Company's financial results for the second quarter ended June 30, 2013.  The press release reported that total revenue for the 2013 second quarter was $115.9 million, with net income of $3.8 million, or $0.05 per diluted share.

58.     On October 24, 2013, after the market closed, Defendants disclosed that defendant Alston "has resigned as [Ixia's] President and CEO and as a member of its board of directors following a determination by the Ixia audit committee that although he had attended Stanford University, he had misstated his academic credentials, incorrectly claiming to have received a B.S. and a M.S. in Computer Science, and had misstated his age and early employment history."

59.     On this news, the Company's shares declined $0.78 per share, or nearly 5%, to close on October 25, 2013, at $14.94 per share.

60.     On November 21, 2013, Defendants filed with the SEC a Form 8-K, disclosing that due to Defendants' failure to file a Form 10-Q for the quarter ended September 30, 2013, the Company was no longer in compliance with Nasdaq Listing Rules.  The Form 8-K set forth, in relevant part:

On November 19, 2013, Ixia (the "Company") received a notice (the "Nasdaq Notice") from The NASDAQ Stock Market LLC ("Nasdaq") stating that because the Company had not yet filed its Quarterly Report on Form 10-Q for the quarter ended September 30, 2013 (the "Form 10-Q"), the Company no longer complies with the Nasdaq Listing Rules and specifically with Nasdaq Listing Rule 5250(c)(1). Nasdaq Listing Rule 5250(c)(1) requires listed companies to timely file all required periodic financial reports with the Securities and Exchange Commission (the "SEC").

In a Form 12b-25 Notification of Late Filing filed by the Company with the SEC on November 13, 2013 (the "Form 12b-25"), the Company reported that as a result of the recent resignation of Victor Alston, the Company's former President and Chief Executive Officer, the Company's Audit Committee, with the assistance of independent counsel, is conducting an email review and performing additional procedures in order to

- 15 -

ensure the accuracy of its recording of financial information and appropriateness of its financial reporting. The Company also reported in the Form 12b-25 that these procedures need to be completed prior to the filing of the Form 10-Q, and that the Company expected to file the Form 10-Q by the extended deadline of November 18, 2013. As announced by the Company in a press release issued on November 18, 2013, however, the Company was unable to file the Form 10-Q by the extended deadline.

The Nasdaq Notice provides that the Company has 60 calendar days from the date thereof to submit to Nasdaq a plan to regain compliance with the Listing Rules. The Company intends to submit a plan to regain compliance within the 60-day period. If Nasdaq accepts the Company's plan, then Nasdaq may grant the Company up to 180 days from the prescribed due date for filing the Form 10-Q (i.e., until May 19, 2014) to regain compliance. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq Hearings Panel.

61.     As a result of the foregoing, the Company has been damaged.

### The Illicit Insider Sales

62.     As set forth above, in a period of just over one month (between early February 2013 and the middle of March 2013), and while in possession of material, adverse non-public information, the Insider Selling Defendants, which included a majority of the members of the Board (namely Ginsberg and Hamilton), illicitly sold 923,675 shares of their personally held or controlled Company stock at artificially inflated prices, collectively reaping proceeds of *over $19 million*.  In addition, and as set forth above, *WSJ* observed that these sales exceeded what the Insider Selling Defendants had sold during the previous *seven years*.

63.     These illicit insider sales by the Insider Selling Defendants break down as follows:

| Date | Defendant | Shares | Sale price | Proceeds ($) |
|------|-----------|--------|-----------|-------------|
| Mar 11, 2013 | Hamilton | 7,500 | Sale at $21.81 per share. | 163,575 |
| Mar 8, 2013 | Buckly | 40,000 | Sale at $21.66 per share. | 866,400 |
| Mar 8, 2013 | Buckly | 15,000 | Sale at $21.68 - $21.8 per share. | 326,000 |
| Mar 6, 2013 | Alston | 45,754 | Sale at $21.50 - $22 per share. | 995,000 |
| Mar 6, 2013 | Buckly | 60,000 | Sale at $21.68 - $22.25 per share. | 1,318,000 |
| Mar 5, 2013 | Miller | 14,345 | Sale at $21.15 per share. | 303,396 |
| Mar 5, 2013 | Grahame | 44,687 | Sale at $20.90 per share. | 933,958 |
| Mar 5, 2013 | Colston | 7,500 | Sale at $21.24 per share. | 159,300 |

- 16 -

| | | | | |
|---|---|---:|---|---:|
| Mar 5, 2013 | Buckly | 26,669 | Sale at $21.07 - $21.28 per share. | 565,000 |
| Mar 4, 2013 | Miller | 810 | Sale at $20.78 per share. | 16,831 |
| Mar 1, 2013 | Grahame | 5,157 | Sale at $20.08 per share. | 103,552 |
| Feb 28, 2013 | Colston | 10,000 | Sale at $19.88 per share. | 198,799 |
| Feb 25, 2013 | Miller | 2,660 | Sale at $20.37 - $20.4 per share. | 54,000 |
| Feb 19, 2013 | Buckly | 13,438 | Sale at $21.06 per share. | 283,004 |
| Feb 19, 2013 | Alston | 2,003 | Sale at $20.90 per share. | 41,862 |
| Feb 19, 2013 | De Graaf | 9,343 | Sale at $20.94 - $20.99 per share. | 196,000 |
| Feb 19, 2013 | Williams | 678 | Sale at $20.90 per share. | 14,170 |
| Feb 19, 2013 | Grahame | 1,142 | Sale at $20.90 per share. | 23,867 |
| Feb 19, 2013 | Colston | 595 | Sale at $20.90 per share. | 12,435 |
| Feb 19, 2013 | Miller | 2,252 | Sale at $20.90 - $20.99 per share. | 47,000 |
| Feb 15, 2013 | Grahame | 17,812 | Sale at $21.13 per share. | 376,367 |
| Feb 15, 2013 | Miller | 500 | Sale at $21.29 per share. | 10,645 |
| Feb 14, 2013 | Colston | 17,500 | Sale at $21.17 per share. | 370,475 |
| Feb 14, 2013 | Buckly | 43,400 | Sale at $21.25 - $21.26 per share. | 922,000 |
| Feb 13, 2013 | Ginsberg | 25,616 | Sale at $21.02 per share. | 538,448 |
| Feb 13, 2013 | Colston | 19,022 | Sale at $21.20 - $21.25 per share. | 404,000 |
| Feb 13, 2013 | Grahame | 15,000 | Sale at $21.20 per share. | 318,000 |
| Feb 12, 2013 | Buckly | 72,000 | Sale at $21.05 - $21.15 per share. | 1,519,000 |
| Feb 12, 2013 | Ginsberg | 49,384 | Sale at $21.09 per share. | 1,041,508 |
| Feb 11, 2013 | Colston | 17,555 | Sale at $20.50 - $20.51 per share. | 360,000 |
| Feb 11, 2013 | De Graaf | 70,312 | Sale at $20.50 - $20.51 per share. | 1,442,000 |
| Feb 11, 2013 | Miller | 2,450 | Sale at $20.60 - $20.67 per share. | 51,000 |
| Feb 11, 2013 | Buckly | 26,900 | Sale at $20.55 - $20.62 per share. | 554,000 |
| Feb 8, 2013 | Buckly | 73,100 | Sale at $20.53 - $20.81 per share. | 1,511,000 |
| Feb 8, 2013 | Miller | 11,724 | Sale at $20.20 - $20.55 per share. | 239,000 |
| Feb 8, 2013 | Grahame | 20,000 | Sale at $20.89 per share. | 417,800 |
| Feb 8, 2013 | Rager | 15,000 | Sale at $20.47 per share. | 307,050 |
| Feb 8, 2013 | Rager | 22,867 | Sale at $20.40 per share. | 466,486 |
| Feb 8, 2013 | Williams | 94,000 | Sale at $20.05 per share. | 1,884,699 |
| *Totals:* | | *923,675* | | *$19,355,627* |

- 17 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP.
CODE §§25402/25502.5

**DERIVATIVE AND DEMAND ALLEGATIONS**

64.     Plaintiff brings this action derivatively in the right and for the benefit of Ixia to redress the breaches of fiduciary duty and other violations of law by Defendants.

65.     Plaintiff will adequately and fairly represent the interests of Ixia and its shareholders in enforcing and prosecuting its rights.

66.     The Board currently consists of the following four (4) directors: defendants Ginsberg, Asscher, Fram and Hamilton.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

(a)     Defendants Ginsberg and Hamilton (a majority of the Board) each illicitly sold shares of Ixia stock while in possession of material, non-public adverse information, during a time in which Ixia stock was artificially inflated due to Defendants' false and misleading statements.  As a result of these illicit sales, defendants Ginsberg and Hamilton each received direct financial benefits not shared with Ixia shareholders, and are therefore each directly interested in a demand.  Further, defendants Ginsberg and Hamilton each are interested in a demand because they face a substantial likelihood of liability for their breaches of fiduciary duties of loyalty and good faith.  Accordingly, demand upon a majority of the members of the Board is excused, and demand is therefore futile.

(b)     During the Relevant Period, defendants Asscher, Fram and Hamilton (a majority of the Board) served as members of the Audit Committee.  Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the Company's annual and quarterly financial reports and reviewing the integrity of the Company's internal controls.  Defendants Asscher, Fram and Hamilton breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings, particularly regarding the Company's accounting methods and defendant Alston's academic qualifications.  Therefore, defendants Asscher, Fram and Hamilton each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

- 18 -

(c)     The principal professional occupation of defendant Ginsberg is his employment with Ixia as its Chief Innovation Officer and acting CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  In addition, according to the Company's Proxy Statement filed with the SEC on May 20, 2013 (the "2013 Proxy"), Defendants have admitted that defendant Ginsberg is not independent.   Thus, defendant Ginsberg lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.  In addition, defendant Ginsberg faces a substantial likelihood of liability for his illicit sales of Ixia stock, as set forth above.

(d)     Defendants Ginsberg, Asscher, Fram and Hamilton (i.e. the entire Board) each signed the false and misleading 2010 10-K and the false and misleading 2011 10-K.  The 2010 10-K and the 2011 10-K were false and misleading because (among other things) they misreported the Company's earnings and made false and misleading statements regarding the Company's internal controls.  Therefore, Ginsberg, Asscher, Fram and Hamilton each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty for Disseminating False and Misleading Information

67.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

68.     As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty to ensure that Ixia disseminated accurate, truthful and complete information to its shareholders.

69.     Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Ixia shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls, and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

- 19 -

70.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duties for Failing to Maintain Internal Controls

71.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

72.     As alleged herein, each of the Defendants (and particularly the Audit Committee Defendants) had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

73.     Defendants willfully ignored the obvious and pervasive problems with Ixia's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

74.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

## COUNT III

### Against All Defendants for Unjust Enrichment

75.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Ixia.

77.     Plaintiff, as a shareholder and representative of Ixia, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

- 20 -

**COUNT IV**

**Against All Defendants for Abuse of Control**

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Ixia, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing Ixia to misrepresent material facts regarding its financial position and internal controls.

80.     As a direct and proximate result of Defendants' abuse of control, Ixia has sustained significant damages.

81.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

82.     Plaintiff, on behalf of Ixia, has no adequate remedy at law.

**COUNT V**

**Against All Defendants for Gross Mismanagement**

83.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.     Defendants had a duty to Ixia and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Ixia.

85.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Ixia in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Ixia's affairs and in the use and preservation of Ixia's assets.

86.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Ixia to engage in the scheme complained of herein which they knew had an unreasonable risk of

- 21 -

damage to Ixia, thus breaching their duties to the Company.   As a result, Defendants grossly mismanaged Ixia.

## COUNT VI

### Against The Insider Selling Defendants For Breach Of Fiduciary Duties For Insider Selling And Misappropriation Of Information

87.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.   At the time of the stock sales set forth herein, the Insider Selling Defendants were in possession of material, adverse, non-public information described above, and sold Ixia common stock on the basis of such information.

89.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Ixia common stock.

90.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's projections were materially overstated and that Ixia's business prospects were much bleaker than what was disclosed to the public.  The Insider Selling Defendants' sales of Ixia common stock while in possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

91.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

92.   Plaintiffs on behalf of Ixia have no adequate remedy at law.

## COUNT VII

### Against the Insider Selling Defendants for Violations of California Corporations Code Sections 25402 and 25502.5

93.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

- 22 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP. CODE §§25402/25502.5

94.    At the time of the stock sales set forth herein, the Insider Selling Defendants, by reason of their high executive and/or directorship positions with Ixia, had access to highly material information regarding Ixia, including the information set forth herein regarding the Company's projections policies and lack of internal controls.  While in possession of the material, adverse, non-public information described above, the Insider Selling Defendants collectively sold more than 923,000 shares of Ixia common stock held by them (or for their benefit) for proceeds of more than $19 million.

95.    At the time of the Insider Selling Defendants' stock sales, the materially adverse facts detailed herein were facts not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Ixia shares at that time.

96.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse, nonpublic information detailed above and thus sold their Ixia common stock in violation of California Corporations Code Section 25402.

97.    Pursuant to California Corporations Code Section 25502.5, the Insider Selling Defendants, and each of them, are liable to Ixia for damages in an amount equal to up to three times the difference between the price at which Ixia common stock was sold by the Insider Selling Defendants, and each of them, and the market value which that Ixia common stock would have had at the time of the sale if the adverse information known to the Insider Selling Defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

98.    At all relevant times, Ixia common stock has been held by more than 500 shareholders of record.  Ixia has assets in excess of $1 million.

99.    Plaintiff, on behalf of Ixia, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

- 23 -

1    B.    Directing Ixia to take all necessary actions to reform and improve its corporate

2   governance and internal procedures to comply with applicable laws and to protect the Company and its

3   shareholders from a repeat of the damaging events described herein, including, but not limited to,

4   putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles

5   of Incorporation and taking such other action as may be necessary to place before shareholders for a

6   vote a proposal to strengthen the Board's supervision of operations and develop and implement

7   procedures for greater shareholder input into the policies and guidelines of the Board;

8    C.    Awarding to Ixia restitution from Defendants, and each of them, and ordering

9   disgorgement of all profits, benefits and other compensation obtained by the Defendants;

10    D.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable

11   attorneys' fees, accountants' and experts' fees, costs, and expenses; and

12    E.    Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

14    Plaintiff demands a trial by jury.

15   DATED: December 19, 2013           THE WEISER LAW FIRM, P.C.
                                        KATHLEEN A. HERKENHOFF (168562)

16

17

18                                      KATHLEEN A. HERKENHOFF

19                                      12707 High Bluff Drive, Suite 200
20                                      San Diego, CA 92130
                                        Telephone: (858) 794-1441
21                                      Facsimile: (858) 794-1450
                                        kah@weiserlawfirm.com
22
                                        THE WEISER LAW FIRM, P.C.
23                                      ROBERT B. WEISER
                                        BRETT D. STECKER
24                                      CHRISTOPHER L. NELSON
                                        22 Cassatt Avenue, First Floor
25                                      Berwyn, PA 19312
                                        Telephone: (610) 225-2677
26                                      Facsimile: (610) 408-8062

27
                                        Attorneys for Plaintiff
28                                              - 24 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, UNJUST ENRICHMENT AND VIOLATIONS OF CAL. CORP.
CODE §§25402/25502.5

## VERIFICATION

I, Colleen Witmer, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action.  I have read the foregoing Complaint and authorized its filing.  Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: 12/12/13

Colleen Witmer

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge     R. Gary Klausner     and the assigned Magistrate Judge is     Frederick F. Mumm    .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-9359-RGK (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

December 19, 2013
_____
Date

By   MDAVIS
_____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☑ Western Division | ☐ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| COLLEEN WITMER, Derivatively on Behalf of IXIA | VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, ERROL GINSBERG, JONATHAN FRAM, LAURENT ASSCHER, GAIL HAMILTON, JON F. RAGER, CHRISTOPHER LEE WILLIAMS, ALAN GRAHAME, RAYMOND DE GRAAF, COLSTON H. WALKER II, RONALD W. BUCKLY and IXIA |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|
| Kathleen A. Herkenhoff (168562)<br>The Weiser Law Firm, P.C.<br>12707 High Bluff Drive, Suite 200<br>San Diego, CA 92130  Phone: (858) 794-1441 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1332(a)(2) and 1367(a), Shareholder Derivative Complaint for Breach of Fiduciary Duty, Gross Mismanagement, Abuse of Control, Unjust Enrichment

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV13-09359

CV-71 (09/13)　　　　　　　　　　CIVIL COVER SHEET　　　　　　　　　　Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE**:  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court?<br><br>☐ Yes  ☒ No<br><br>If "no, " go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action?<br><br>☐ Yes  ☒ No<br><br>If "no, " go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county  in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s):  13-08440

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _(signature)_   DATE: 12/19/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |